# CHARLESTON.

HOUSTON LUMBER Co. *et al. v.* WETZEL & TYLER RAILWAY Co. FRICK & LINDSAY Co. *v.* SAME.

Submitted June 12, 1911.      Decided November 7, 1911.

1. MECHANICS' LIENS—*Proceedings to Perfect—Statement of Amount Due—Sufficiency.*

The "just and true account of the amount due", required by section 4, ch. 75, Code (1906) to preserve a lien for labor, or material furnished, given by section 2, of said chapter, if the contract therefor be made directly with the owner of the property, need not state the account by items giving the year, month and day, though it is proper, and the better practice to do so. (p. 685).

2. SAME—*Proceedings to Perfect—Statement of Amount Due— Sufficiency—Pleading.*

And although it is essential to the validity of such lien that said account be filed in the clerk's office within sixty days after the lienor ceases to labor or furnish material, it need not show affirmatively on its face that it was so filed within the time prescribed. In a suit to enforce such lien, however, this fact with all other facts necessary to a valid lien must be alleged and if controverted fully proven. (pp. 685, 686).

3. SAME—*Enforcement—Bill—Effect.*

If the bill to enforce such a lien alleges the existence of all facts essential to a valid lien for labor or material, and these allegations are not controverted, they must for the purposes of the suit be taken as true, unless some exhibit filed therewith

and vouched for the truth thereof, impugns the truth of some one or more of the material facts alleged.   (pp. 685, 686).

4.   SAME—*Enforcement—Bill—Variance.*

The fact of the filing of such account in the county clerk's office within the time required by said section 4, ch. 75, Code (1906) when so alleged in the bill, and proven or not controverted by answer, is not impugned by the original of such account filed as an exhibit with the bill, which does not show on its face the year the last material was furnished, or by the endorsement by the clerk on the back thereof showing the date of the filing thereof and the book and page where recorded, which does not appear to be signed by such clerk.   (p. 688).

5.   RAILROADS—*Liens—Proceedings to Perfect—Statement of Claim —Description of Property—Sufficiency.*

A lien for material furnished a railway company for constructing its railway which described the property on which the lien is claimed, as "the railway of said corporation situate in the Counties of Wetzel and Tyler and extending from the City of Sistersville in Tyler County to the Town of Brooklyn in Wetzel County", is "sufficiently accurate" for identification, and satisfies all requirements of said section 4, ch. 75, of the Code. (p. 689).

6.   APPEAL AND ERROR—*Presentation of Questions in Lower Court— Exceptions—Necessity.*

If error of law appear on the face of a decree, or the report of a commissioner, though not excepted to, it may be corrected on appeal to this Court by the party aggrieved thereby.   (p. 690).

7.   MORTGAGES—*Priority—Mechanics' Liens.*

A mechanics' lien begins from the time the labor or the furnishing of material begins, and has priority over a deed of trust subsequently executed on the same property.   (p. 691).

Appeal from Circuit Court, Wetzel County.

Action of the H. C. Houston Lumber Company and others and by the Frick & Lindsay Company against the Wetzel & Tyler Railway Company.   From an adverse decree, and a decree denying their motion to reverse and set aside the former decree so far as it affected their claim, plaintiffs W. F. White and another appeal.

*Affirmed in part, Reversed in part, and Rendered.*

*Neal & Strickling* and *Thomas P. Jacobs* for appellants.

*S. Bruce Hall,* for appellees Mercantile Trust Company and

others; *E. L. Robinson,* for appellees First National Bank and others.

MILLER, JUDGE:

Appellants, White Bros., plaintiffs below, complain of two decrees of the circuit court, the first, pronounced February 24, 1908, adjudicating the principles of the cause, denying them any relief, and decreeing a sale of the property of the defendant corporation to satisfy other debts and liens proven and decreed thereon; the second, pronounced February 10, 1909, denying their motion and refusing, on appellants' petition filed, to reverse and set aside said former decree so far as it affected their claim.

Appellants sought to establish and have decreed against the property of the defendant company a lien for certain materials alleged to have been furnished by them to it, under contract, to be used, and which the bills allege were used by it in the erection and construction of its said railway in Wetzel and Tyler counties, and the same property mentioned and described in their account therefor filed with and made a part of said bills.

So far as we can see the averments of the original and amended bills satisfy all requirements of a bill to enforce such a lien, viz: The existence of the contract; the terms thereof; that the material was furnished pursuant to the contract; the filing of just and true account of the amount due thereon to them with the clerk of the county court within the time required by law; a description of the property against which the lien is asserted; the name of the owner thereof, and that the suit was brought within the time required by law, and the existence of the debt. *Lunsford* v. *Wren,* 64 W. Va. 458, and cases cited.

These bills were not demurred to, nor were the allegations thereof controverted by any of the answers filed. Both bills specifically allege that within sixty days from the time appellants ceased to furnish said material they filed with the clerk of the county court of said Wetzel county a just and true account of the amount due and owing them from said railway company after allowing all credits, together with a description of the property intended to be covered by said lien, duly sworn to January 19, 1904, and which was duly recorded in Mechanic's

Lien Book, as would more fully appear from said account filed as "Exhibit F" therewith. These allegations, therefore, being well pleaded, and for the purposes of the suit stood confessed, and by the very terms of the statute, section 36, ch. 125, Code 1906, no further proof was required.

The correctness of the decrees below depend on the construction that should be given our statute, section 4, ch. 75, Code (1906). It provides: "Every lien provided for in the second and third sections shall be discharged unless the person desiring to avail himself thereof shall, within sixty days after he ceases to labor on, or furnish material or machinery for such building or other structure, file with the clerk of the county court of the county, in which the same is situated, a just and true account of the amount due him, after allowing all credits, together with a description of the property intended to be covered by the lien, sufficiently accurate for identification, with the name of the owner or owners of the property, if known, which account shall be sworn to by the person claiming the lien, or some person in his behalf." Appellants' lien, "Exhibit F" with the bill, apparently the original account filed with the clerk of the county court, is dated January 1, 1904, and is sworn to January 19, 1904. The account purports to be itemized, beginning September 3, and running through September, October, November and ending December 16, and showing a total balance, after allowing credits, of $2,920.37; but at no other place in the account, except the date January 1, 1904, does the year appear. On the back of the account there is this' endorsement: "Clerk's Office, County Court, Wetzel County, W. Va. Filed for record this 19th day of Jan'y. A. D. 1904, at 10:40 o'clock A. M. Recorded in Book 1, of page 396." In the return of the clerk to a writ of *certiorari* bringing up this memorandum, he certifies this note to be by the clerk, and a part of the record of the cause. It does not appear to be signed by the clerk. If, however, the facts alleged in the bills be not impugned by this exhibit, or the memorandum thereon, they must be regarded as facts established for the purpose of this suit. The contention of appellees, however, is that as the lien does not show *affirmatively,* on its face, as they contend it must, every fact necessary to be alleged and proven to make it a good and valid lien on the property, the lien

must fail. They say that by the omission of the year over or opposite the items therein the account fails to show affirmatively "when the work was performed and material furnished", wherefore fatally defective; and that it is not shown on the face of the exhibit, nor at all, except by allegation, which they say is not sufficient, that it was filed in the clerk's office as the statute requires, within sixty days after appellants ceased to furnish said material. Does the "just and true account of the amount due" required by our statute call for an itemized statement, with years, months, and days, when the contract is made directly with the owner? The authorities, or the great weight of them, we think, say no. 27 Cyc. 184. This authority says: "Under a statute requiring the claim to state the time when the materials were furnished or the work done the omission of the year is fatal, although the months and days are stated; but under a statute requiring merely 'a just and true account' the omission of the year is not fatal when the months and days on which the items were furnished are stated. Where the year is stated only at the head of the account but the paper itself shows that such year refers to the days and months placed opposite the items it is sufficient." Boisot on Mech. Liens, section 411, says: "The claim need not contain an itemized account of the lien debt, in the absence of any language in the statute expressly or by necessary implication requiring it." And in section 418 this writer says: "Where the statute expressly requires the claims to set forth the times when the material was furnished or the labor performed, an omission of such allegations in the claim renders the lien void  *  *  *  *'. But, where the statute does not expressly require the claim to give the dates of the account, such dates need not be stated." See also *Id.* section 412; *Doane* v. *Clinton,* 2 Utah 417; *Cook* v. *Rome Brick Co.,* 98 Ala. 409. Prior decisions of this Court we think support this view. *O'Neil* v. *Taylor,* 59 W. Va. 370, 53 S. E. 471; *Grant* v. *Cumberland Valley Cement Co.,* 58 W. Va. 162, 52 S. E. 36. The second point in the syllabus in the latter case, says: "When the basis of such lien is work and labor, and the recorded paper shows the kind, amount and price thereof, failure to enter each month's, day's or year's service, as the case may be, as a separate item of charge, and credit

each payment as a separate item, with the date thereof, will not vitiate such paper, if, on its face, it discloses with reasonable certainty the kind, amount and contract price of the service and time of performance." This point also says that, "Itemization in form is unnecessary, if it appear in substance and effect." And the third point is: "To determine the sufficiency of such an account and claim, the account proper and the sworn statement appended to it, may be read together and considered as a whole." The sixth point is that, "If a bill and its exhibits, read together, show all the facts necessary to be alleged in a bill sufficient in law, a demurrer thereto is properly overruled." The exact point we have for decision in this case was not directly involved or decided in that case. The point seems to have been more or less directly involved however in *O'Neil* v. *Taylor, supra.* In the account in that case no dates were given for any of the jobs of work done on the building, and it was said, in point three of the syllabus, that "A general statement of the demand of such contractor showing its nature and character, and the amount due or owing thereon, after allowing all credits is a compliance with the statute." And reviewing the Virginia case of *Shackleford* v. *Beck,* 80 Va. 573, construing the statute of that state, and differentiating it from our own, it is said, that under the Virginia statute, "the lienor is required to file, within the time specified after the completion of the work, in the clerk's office among other things, 'a true account of the work done or material furnished', while our statute requires 'a just and true account of the amount due him.' " The statutes of other states are also differentiated from ours. And at page 378 it is observed that, "In some of the cases cited by defendant's counsel the dates of performing the work and furnishing the material are required by the statutes to be given", but that the only date material under our statute, is the date when the work was completed, or the last material furnished. This exact point is the subject of sections 421 and 422, Boisot on Mech. Liens. In section 421 he says: "Mechanic's lien statutes usually, if not invariably, limit the time within which the claim may be filed. In many cases this time runs from the completion of the work. The question therefore arises whether a lien claim should *affirmatively* show that it is filed within the required time, or whether that may be left to be proved at the trial. While it undoubtedly

is the better practice to have the claim show this fact *affirmatively*, yet there are numerous decisions to the effect that it is not necessary to do so." The cases supporting this view, cited and reviewed, are from Alabama, California, Connecticut, Missouri, New Jersey, New York, and Utah. Those opposing it, referred to in section 422, are from Nebraska, Pennsylvania, and Minnesota. Our statute certainly does not require the account to show *affirmatively* that it was filed within sixty days after ceasing to furnish material; and it seems to us that we should not read into a statute, providing as ours does for continuing or perpetuating such lien, and which begins at the time the work is commenced or the first material furnished, a requirement not specifically provided or clearly implied by the terms thereof. The owner with whom the contract is made is necessarily charged with actual notice of the terms of his contract, the dates of performing the labor or furnishing the material under the contract, and the time when the contractor ceases to labor or furnish material; and the filing of "a just and true account of the amount due", if in fact filed within the time required by statute, is certainly sufficient to give notice of a lien though the fact may not affirmatively appear on the face of the account, and if the bill alleges all the essential facts, entitling the lienor to his lien, and these facts are either admitted or proven, this, under our decisions, is all that should be required. The statute should be given a fair and liberal construction. *Blowpipe Co.* v. *Spencer*, 40 W. Va. 698.

It has been suggested, however, that the exhibit contradicts the allegations of the bills, in that it fails to show on its face, or by the certificate of the clerk, that it was filed within the time prescribed and that although the allegations of the bill be sufficient and be taken for confessed, the exhibit contradicting them must be looked to rather than the bill itself to sustain the lien. The law undoubtedly is, that in cases of conflict between the instrument sued on, or vouched for the allegations of the bill, the instrument itself and not the bill will be looked to for its correct interpretation, and the facts alleged as appear therein. *Richardson* v. *Ebert,* 61 W. Va. 523: *Board of Education* v. *Berry,* 62 W. Va. 434; *Loar* v. *Wilfong,* 63 W. Va. 306; *Lea* v. *Robeson,* 78 Mass. (12 Gray) 280; *Dillon* v. *Barnard,* 21 Wal. 430; *Land Co.* v. *Maxwell Land Co.,* 139

U. S. 569. But there is nothing upon the face of "Exhibit F" contradicting the allegations of the bills, and though the endorsement thereon, brought up on *certiorari* is not signed by the clerk of the county court, and is a part of the record, it in no way contradicts the averments of the bills. So far as this endorsement is evidence at all it tends to support the bills. The principles enunciated in the authorities cited are not applicable, we think, to the facts in this case.

But it is said the description of the property on which the lien is claimed is too indefinite. As we have seen the statute requires the description to be sufficiently accurate only for identification. The description of the property given in the lien is, "the railway of said corporation situate in the counties of Wetzel and Tyler and extending from the city of Sistersville in Tyler county to the Town of Brooklyn in Wetzel county." Because of the character of a railway traversing as it does in this case the streets and roads of a town and county, the notoriety which is necessarily given such a work of internal improvement, the description in this lien is sufficiently accurate we think for identification.

Another point not presented or argued by counsel, though suggested in council, is that perhaps public policy would forbid the laying of a mechanic's lien upon railways of this character. Mr. Boisot, section 204, discusses this subject, referring to the conflicting decisions. After a brief review of the cases he says in conclusion, that "the better reason would seem to show that mechanics' liens may be enforced against street car companies under the laws giving liens on railroads." Our statute does not in specific terms give such a lien on railroads, but we think the subject is covered in general terms by section 2, ch. 75, Code (1906), giving mechanics or materialmen, who furnish any labor or material "for constructing, altering repairing or removing a house, mill, manufactory, or other building, appurtenances, fixtures, bridge, or other structure, by virtue of a contract with the owner or his authorized agent, * * * a lien to secure the payment of the same, upon such house or other structure, and upon the interest of the owner in the lot of land on which the same may stand or to which it may be removed." Is not a railway a structure upon land, and does not the owner have an interest in the land or lot on which

the railway is built, even though it be built on a public road or street? The Circuit Court of Appeals of the United States, for this judicial circuit, has held with respect to the same railroad involved here, that section 7 of the same chapter gave to a corporation employed to supervise the construction of defendant's railway by means of the personal services of its officers and servants, a lien therefor on the property of the railway company, such corporation being within the words of the statute, such "other person" entitled to such lien, section 17, ch. 13, subdivision 9, Code (1906), providing that: "The word 'person' includes corporations, if not restricted by the context." *Wetzel & Tyler Ry Co. v. Tennis Bros.*, 145 Fed. 458, 75 C. C. A. 266; *Id.* 140 Fed. 193. If said section 7 gives to the class of persons described therein a lien on the property of a street railway company, what reason, either on principle or grounds of public policy, can be assigned for denying the like right to the class of persons protected by sections 2 and 3 of the same chapter? We can perceive none.

The question remains, what order of priority should be given appellants' lien? In his report, not excepted to by appellants, the commissioner placed it, along with other mechanic liens, sixth in order of priority, after the bonded indebtedness. On exceptions by Belford and Guyton, and The Best Manufacturing Company, however, who held liens of the same character, and given the same order of priority, the court below properly corrected the commissioner's report by giving them third place in the order of priority, immediately after the vendor's lien of E. A. Pollock. If appellants' lien is valid, as we have decided it is, it is entitled to the same order of priority as those of Belford and Guyton and The Best Manufacturing Company.

Appellants did not except to the report of the commissioner, however, and in a petition filed by them in the court below, for a rehearing of the final decree of February 24, 1908, they represented that their lien had been reported and given its proper and appropriate place in the order of priority. Why they did not except, and why in their petition, after said decree, they should express satisfaction with the order of priority given their lien is not apparent. It is only explainable on the theory of oversight, or inadvertence. The error in the report is pointed out for the first time in this Court, and we are urged to cor-

rect it. Can we properly do so? The admissions of the petitioners in the court below, we do not regard as concluding them. The order of priority to which they are entitled is a purely legal question presented on the face of the decree or record. Our decisions say that "Although no exceptions are filed to a commissioner's report, and the report is confirmed, if the decree of confirmation, upon its face, shows material error as to matter of law, prejudicial to the appellant, for such error the decree should be reversed." *Reitz* v. *Bennett*, 6 W. Va. 417; *Ruhl* v. *Berry*, 47 W. Va. 832; *Haymond* v. *Murphy*, 65 W. Va. 616. If the court below had not, on exceptions to the commissioner's report, denied appellants' their lien on the railway property, it would no doubt, in rearranging the order of priority of the several debts and liens reported, have given appellants their proper place in the order of priority.

It has been suggested in argument, however, that as the record shows appellants had not furnished all the material charged in their mechanic's lien, prior to the date of the execution and recordation of the deed of trust securing the bonds, and prior to the delivery of some of said bonds, the lien is not good for the material furnished subsequently. It seems to be the settled law of this state that a mechanic's lien attaches from the time the performance of the work and furnishing the material begin, and has priority over a deed of trust subsequently executed on the same property. *Cushwa* v. *Imp. L. & B. Ass'n.*, 45 W. Va. 490; *W. Va. Bldg. Co.* v. *Saucer, Id.* 483; *Charleston Lumber Co* v. *Brockmyer*, 18 W. Va. 586; *Bank* v. *Dashiell*, 25 Grat. 616.

We are of opinion therefore that the court below erred in its decree of February 24, 1908, in sustaining exceptions to the report of the commissioner in favor of the appellants, and that this decree to this extent, as well as the subsequent decree of February 10, 1909, in so far as it may be regarded as affecting the rights of appellants to said lien, be reversed and annulled; and the decree which the circuit court should have entered will be entered here, overruling the said exception, and giving decree for the amount of said lien, to be paid third in the order of priority along with the liens of said Belford and Guyton and the Best Manufacturing Company.

*Affirmed in part, Reversed in part, and Rendered.*